**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>EDWARD HELDMAN III,<br>Defendant. | Case No. 2:25-CR-00540-JLS<br><br>**ORDER DENYING MOTION TO RECONSIDER**<br><br>**ORDER GRANTING 10-DAY STAY** |

This matter is before the Court on the Motion for Reconsideration of Defendant and his Application For Stay Pending Appeal. (*See* Docs. 76 & 84.) As set forth herein, the Court DENIES Defendant's Motion for Reconsideration, and GRANTS in PART Defendant's Motion For Stay Pending Appeal. So that Defendant may seek a stay pending appeal from the Ninth Circuit, the Court HEREBY STAYS the Orders identified by Defendant in his Notice of Appeal (Doc. 82), including the Court's Order of Defendant's Self-Surrender, issued on October 8, 2026 (Doc. 79), for a period of ten days from the entry of this Order.

## I. BACKGROUND

On June 30, 2025, Defendant was charged by Information on sixteen counts of Criminal Contempt in connection with a civil case pending before another district judge. (*See* Doc. 1.) He entered into a Plea Agreement the same day, in which he admitted to "willfully disobey[ing] court orders [and] knowingly sen[ding] threatening or harassing messages to victim[s]" identified in the Plea Agreement by their initials. (*See* Doc. 3 at 6-7.) Defendant agreed to plead guilty to the charges based upon the sixteen threatening messages he sent, as specified in the Information and the Plea Agreement. (Plea Agreement, Doc. 3 at 7-10; Information, Doc. 1 at 2-6.)

On October 7, 2025, the Court continued the change of plea hearing to October 23, 2025 based upon the representations of defense counsel that, *inter alia*, (1) Defendant lived far away from the Court and needed a caretaker to assist him with transportation to the Court, and (2) defense counsel did not believe his client was competent to make "key client decisions" related to his change of plea hearing. (*See* Doc. 24 (application for continuance); Doc. 26 (medical information); Doc. 28 (Order granting continuance).)

Two weeks later, on October 22, 2025, the day before re-scheduled change of plea hearing, defense counsel filed a Motion to Set Hearing to Determine Competency. (Doc. 31.) Therein, defense counsel questioned the validity of the Plea Agreement based upon Defendant's purported lack of mental competency when he signed it. (*See id.* at 2 ("As reported in an earlier filing, a problem has surfaced with Defendant that was not extant when he signed off on the plea agreement, nor when he was arraigned and agreed to the full range of pretrial release conditions, wherein—on each occasion—undersigned joined.").) In doing so, defense counsel relied upon the expertise and the information provided by Defendant's psychiatrist, Dr. Karl Marku. (*See id.* at 5.) In response, the Court again continued the hearing and set a competency hearing for January 8, 2026. (*See* Doc. 33.) The Court adopted the parties' stipulation to continue the trial date until some date after resolution of the competency issue. (Doc. 34.)

On November 6, 2025, the Government declined to have Defendant examined by its own expert, instead deferring "to defense's expert, Dr. Marku." (Doc. 35.)

In seeking a continuance of the January 8, 2026 competency hearing, defense counsel again relied upon the expertise of Dr. Marku. (*See* Doc. 37 at 2 "Dr. Marku informs me that he is confident of fully restored competency, that substantial progress is being made, and that after a few weeks on the new medication likely there will no longer be a competency issue.").) Defense counsel also noted that Dr. Marku's services were not covered by Defendant's insurance and that therefore "[i]t would be helpful if only one later expert report is required." (*Id.*) Defense counsel again indicated that he doubted Defendant's competency to make "key client decisions." (*Id.*) In response, the Court continued Defendant's competency hearing to March 19, 2026, setting a deadline for expert reports of February 27, 2026. (Doc. 38.)

Shortly after the deadline for expert reports, on March 2, 2026, defense counsel again sought a continuance of the competency hearing. (Doc. 40.) He again relied upon the expertise of Dr. Marku, noted that Dr. Marku assured him that "substantial progress [was] being made" as to Defendant's competency, and again made the point that Dr. Marku's services were not covered by Defendant's insurance and that therefore "[i]t would be helpful if only one later expert report is required." (*Id.* at 2-3.) On this basis, the Court continued the competency hearing again, to May 28, 2026, with expert reports due three weeks in advance of the hearing. (Doc. 41.) On May 11, 2026, defense counsel sought another continuance of the competency hearing on the same grounds as before. (*See* Doc. 43.) The Court continued the hearing, setting it for August 20, 2026 (with expert reports three weeks in advance of the hearing). (Doc. 44.) The Court stated in its Order that it would grant no further continuances. The Court stated:

> Defendant is ORDERED to notify the Court no later than July 24, 2026, if Defendant's expert continues to be of the opinion that more time is needed to restore Defendant's competency, in which case the Court will appoint its own expert to conduct an evaluation of Defendant.

(*Id.*)

A few days before the deadline imposed by the Court's Order, defense counsel again sought additional time. (*See* Doc. 45.) Specifically, defense counsel referenced delays caused by his expert's vacation schedule:

> 6. Heldman most recently saw Dr. Marku on July 9, 2026, but will not see him again until July 30, 2026 because Dr. Marku is on vacation and traveling for the entire intervening period; and Dr. Marku is confident that Heldman is sufficiently stable and so has not referred him to an interim expert, though one is at all times available for all Marku patients. This Marku vacation calendaring was not known to undersigned when the current filing date was set in May 2026.
>
> 7. Dr. Marku thinks it best to prepare his latest report after he sees Heldman on July 30, 2026 [Thursday] and after the intervening three week hiatus. His report can be prepared for filing on the following Monday [08.03.26]. The hearing is on 08.20.26.

(*Id.* at 2.) The Court granted this request and extended the deadline to August 3, 2026. (Doc. 46.) On this due date, defense counsel requested an additional two days. (*See* Doc. 47 at 2 ("Dr. Marku was still working on his latest report on August 3, 2026.").

Thereafter, on August 5, 2026, defense counsel submitted his Declaration, letters from Dr. Marku, and lists of Defendant's prescriptions for under-seal filing. In his Declaration, for the first time, defense counsel stated:

> 10. Dr. Marku is a treating expert, retained for that purpose. He was not retained as a forensic expert, though he has fully cooperated in affording required reports for the Court. Indeed, he has been largely paid by friends as the professionals available on Defendant's affordable health plan were woefully unqualified.

(*See* Westreich Decl. ¶ 10, Doc. 52 at 2 (under seal).)

Nevertheless, defense counsel continued to rely on Dr. Marku's expertise that Defendant would be eventually "fully restored to competency" but that "ongoing variables [did] not permit a current conclusion of restored competency." (*Id.* ¶¶ 12-13.) Defense counsel also

suggested that the Court appoint its own expert to conduct an evaluation of Defendant. (*Id.* ¶¶ 19-20.)

In response to Defendant's filings, on August 7, 2026, the Court issued its Order Re Evaluation of Mental Competency of Defendant. (Doc. 50.) Therein, the Court noted that although it had been "over a year since Defendant's Plea Agreement was filed, and over ten months after defense counsel first filed the Motion seeking a competency hearing, there ha[d] been no expert evaluation of Defendant's competency." (*Id.* at 3.) The Court addressed Defendant's request for a competency evaluation by a Court-appointed expert by directing the Government to file a status report regarding facilitating such an evaluation pursuant to the provisions of 18 U.S.C. § 4241 and § 4247. (*Id.*) The Government timely filed its Status Report (Doc. 58) outlining the procedures by which the Court "may order that a psychiatric or psychological examination of the defendant be conducted." 18 U.S.C. § 4241(b); *see also* 18 U.S.C. § 4247(b)-(c).

In response, defense counsel filed Defendant's Brief re Competency and Objections to the Court's Order. (Doc. 60.) Therein, he argued against an in-custody evaluation. (*Id.* at 5-6.) And notably, for the first time, defense counsel represented that Defendant was competent and that a change of plea hearing should be calendared. (*Id.* at 7.) Specifically, he stated:

> Defense counsel no longer posits any contention that the defendant lacks [mental competency.] There is no longer any basis to question defendant's competency; nor for further competency examination, hearing or commitment; and defendant can be deemed competent and ordered restored to the Court' s regular calendar in accordance with the agreed calendar cooperation clause of the plea agreement, in light of defendant's travel considerations from Arizona as previously detailed.

*Id.*

Thereafter, the Court issued a second Order addressing Defendant's competency evaluation. (*See* Doc. 62.) Therein, it explained its reasoning for exercising its discretion

to order an in-custody, pretrial evaluation of Defendant's competency pursuant to § 4241(b):

> Defendant began making a record of incompetency in October, 2025, including, but not limited to, Defendant's Motion to Set Hearing to Determine Competency, the reports of his treating psychiatrist, his medication lists, and the declarations of his counsel (*see* Docs. 31, 42, & 52-54). Each time a further report was due, Defendant's counsel continued to represent that his client was unable to make competent decisions, the most recent representation of incompetence being less than two weeks ago. Only when, on the Court's order, the Government filed a report explaining the process that would be followed for a court-ordered psychiatric or psychological examination of the defendant did Defendant's counsel decide, quite suddenly, that the issue is "now resolved and there is no basis for further competency examination, hearing or commitment." (Doc. 60 at 6.) The Court is more than a little skeptical at the sudden about-face. Because the Court does not know which of counsel's representations to believe, the Court HEREBY FINDS as follows:
>
> > Presently, there is reasonable cause to believe that the defendant may be suffering from a mental disease or defect rendering him mentally incompetent such that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

(*Id.* at 2.) Thereafter, perhaps due to a failure to give notice to defense counsel, Defendant failed to self-surrender for his competency evaluation. (*See* Oct. 5, 2026 Order, Doc. 75 at 2 n.1.)

In the same Order that addressed the failure to self-surrender, the Court also addressed Defendant's Brief and Objections. (Doc. 70.) Therein, the Court rejected the suggestion that it failed to understand that a pretrial mental competency examination was discretionary and that the accused could be examined out of custody:

> As to the initial determination of competency, although the Court ***is mandated*** to grant a motion to determine the competency of the accused upon a "reasonable cause" finding (§ 4142(a)), the Court ***is not mandated***—i.e., "the court may"—order an in-custody evaluation.

(*Id.* at 3.) The Court went on to explain its rationale for exercising its discretion to order an in-custody evaluation. (*Id.* at 3-5.) A new self-surrender date of October 15, 2026 was set, and the Court ordered Defendant to comply. (Doc. 79.)

Thereafter, Defendant moved for reconsideration (Doc. 78), filed a notice of appeal (Doc. 82), and moved to stay pending appeal (Doc. 83).

## II. RECONSIDERATION

Defendant seeks reconsideration of the Court's exercise of discretion to order an in-custody evaluation pursuant to § 4241(b). (*See* Doc. 78.) Defendant does so by again challenging the Court's exercise of its discretion to order an in-custody evaluation, particularly when the Government has not shown that such an evaluation must necessarily be conducted on an in-custody basis. (*See* Doc. 78-1 at 5-9.)

Defendant is correct that the Court must have a basis for exercising its discretion to order an in-custody evaluation. Circuit courts have emphasized the importance of the district court's consideration of available alternatives, its factual findings supporting a commitment order, and whether commitment furthered a compelling or important governmental interest.

For instance, in *United States v. Deters*, 143 F.3d 577, 582-84 (10th Cir. 1998), the Tenth Circuit rejected a due process challenge to an in-custody mental competency evaluation of the accused pursuant to § 4241. The court acknowledged the strong interest in liberty of the accused. *Id.* at 582 But the court also recognized two compelling reasons justifying an in-custody evaluation. *Id.* at 582-83. First, it identified the interest in ensuring that defendants appear for trials. This was driven by the fact that the accused lived in a different state, had a "transitory" living situation, and had limited funds to travel. Second, the court identified the right to a speedy trial, which is held not only by the defendant but by the Government as well. The trial court had noted a 300-day delay between the indictment and the hearing at which an evaluation was discussed, and there

was a potential for further delay in accommodating the request of the accused for an out-of-state evaluation because the Government would seek an evaluation by its own expert. Thus, ordering an in-custody evaluation would have furthered this second interest in moving the case to trial. In affirming, *Deters* recognized the importance of factual findings by the district court regarding the need for commitment. *Id.* at 584.

Similarly, in *Featherston v. Mitchell*, 418 F.2d 582, 585 (5th Cir. 1969), the Fifth Circuit considered the in-custody evaluation question under the 1964 version of 18 U.S.C. § 4244, which at that time, like the current version § 4241(b), applied to mental competency examinations of the accused.[1] The relevant provision granted discretion to the court to order the accused to submit to an in-custody evaluation regardless of pretrial release status. *Featherston*, 418 F.2d at 585. Although the trial court ordered an in-custody evaluation without considering the alternatives, the appellate court found no abuse of discretion because the record showed that there were no local psychiatrists who could have undertaken such an evaluation. *Id.* at 585-86. The appellate court also noted the importance of having the accused evaluated by a psychiatrist who was familiar with the relevant legal standard, as those conducting in-custody evaluations were. *Id.* at 586.

And in *United States v. Neal*, 679 F.3d 737, 740-41 (8th Cir. 2012), the Eighth Circuit vacated the district court's commitment order requiring in-custody evaluation of a pretrial releasee because it conducted no hearing, required no evidence to justify commitment, made no factual findings, and did not seriously consider the defendant's request for an outpatient evaluation.

**Factual Findings:** Here, the Court's Orders, including this one, recount many reasons for ordering an in-custody evaluation of Defendant.

First and foremost, in the past year, the Court gave Defendant the opportunity for an out-of-custody evaluation. Defendant purported to be obtaining one, but in fact has not

---

[1] In its present version, § 4244 applies only to a convicted defendant.

been examined by an evaluator qualified to assess whether he is capable of understanding the nature of the proceedings against him and capable of assisting in his own defense. As noted previously, there is no evidence Dr. Marku is familiar with the relevant standard; however, those professionals who are tasked with preparing § 4247(c) reports for the Bureau of Prisons are clearly qualified to provide that information to the Court.

Second, it is clear that defense counsel has repeatedly and unnecessarily delayed the proceedings under the guise of questioning Defendant's mental competency. Specifically: Defense counsel repeatedly sought continuances of a change of plea hearing to allow for evaluation of Defendant's competency, beginning over a year ago. Defense counsel relied repeatedly upon the expertise of Dr. Marku, twice identifying him as an expert by asking that expert reports be limited to one additional one, because of the cost, which medical insurance did not cover. Despite this reliance and identification, defense counsel did an abrupt about-face in his position, stating that Dr. Marku had not ever been identified as a "forensic expert." A review of the record reveals that, if Dr. Marku was not Defendant's expert evaluator, no such evaluator was ever retained by defense counsel. The Court therefore finds that the many requests for continuances by the defense were intended to delay the proceedings, and did, in fact, delay the proceedings.

Third, on multiple occasions over a period of more than ten months, defense counsel continued to maintain that Defendant was not mentally competent. Then, less than two weeks later after the Court indicated it would order in-custody evaluation, defense counsel again abruptly did an about-face and stated that there was no longer cause to believe that Defendant was incompetent, and that he should be scheduled to enter his plea of guilty. However, by this point, defense counsel's assessment of Defendant's mental competency has become patently untrustworthy.

**Consideration of Available Alternatives:** Here, Defendant seeks an in-community evaluation of his competency. Yet he has not identified any manner in which this can be accomplished, despite having been given multiple chances to do so. His best suggestion is

that the Court could arrange it, but has no details on how that might be possible. As noted previously, the Court's attempt at appointing an expert (without resort to the procedure specified in § 4742(b)) has proved fruitless.

**Governmental Interest:** Defendant's intentional delay tactics have interfered with the Government's (and the public's) speedy trial rights and have wasted judicial resources.

Defendant's Motion is DENIED.

## III. MOTION FOR STAY

Defendant moves for a stay pending appeal or alternatively, a temporary stay so that he may seek a stay in the Ninth Circuit. The Court GRANTS the alternative relief sought by Defendant. ACCORDINGLY, the Orders of the Court identified by Defendant in his Notice of Appeal (Doc. 82), including the Court's Order of Defendant's Self-Surrender, issued on October 8, 2026 (Doc. 79), are hereby STAYED for a period of ten days from the entry of this Order.

**IT IS SO ORDERED.**

DATED: October 13, 2026

HON. JOSEPHINE L. STATON
United States District Judge